UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK
────────────────────────────

GLEN SMITH, 05-B-2120,

       Petitioner,

      -v-                          08-CV-6065(MAT)
                                         **ORDER**
SUPERINTENDENT J. LEMPKE,

       Respondent.

────────────────────────────

# I.   Introduction

Petitioner Glen Smith ("petitioner"), who is represented by counsel, has filed a timely petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254, challenging a conviction of Kidnapping in the Second Degree (N.Y. Penal L. ("P.L.") § 135.20) and Criminal Possession of Stolen Property in the Fourth Degree (P.L. § 165.45(1)) following a jury trial in Chemung County Court before Judge James T. Hayden. He was subsequently sentenced to concurrent terms of imprisonment of 25 years, determinate, and 1 and 1/3 to 4 years, indeterminate, in addition to 5 years of post-release supervision.

## II.  Factual Background and Procedural History

### A.   Trial Evidence

On the morning of February 5, 2005, at a shopping mall in Horseheads, New York, Gayle Kreitzer ("the victim") was sitting in her parked car when petitioner parked his pickup truck beside her, exited his vehicle, and opened the passenger-side door of the

victim's car. According to the victim, petitioner was brandishing a knife and demanded money. Petitioner got inside the victim's car and ordered her to drive. While the victim was driving, petitioner rummaged through the victim's purse, taking cash and a checkbook. Insisting that he needed more money, petitioner forced the victim to drive to several banks (including two banks in Pennsylvania) and two supermarkets where the victim repeatedly attempted to make withdrawals and cash a check for the petitioner. Eventually, the victim was able to withdraw $1500 from her credit account, which she gave to petitioner.

After four hours, the victim was finally able to escape when petitioner had her stop at a convenience store on the way back to the mall. The victim ran into the store and told the clerk she was being robbed, who then called the police. Meanwhile, petitioner had fled on foot, but was apprehended shortly thereafter. During the search of his person, police recovered $1500 in cash from petitioner's left pocket, but did not find any weapons. T. 15-52; 109-111.[1]

**B.   Petitioner's Defense**

Petitioner took the stand at trial, testifying that he was known to regularly use marijuana and methamphetamine, and would "party quite a bit all over the place." On February 5, petitioner

---

[1] Citations to "T.__" refer to pages of the trial transcript; "S.__" refers to the sentencing transcript; amd "J.S.__" refers to the jury selection transcript.

was smoking marijuana in his truck in a mall parking lot when the victim, whom he had recognized from "parties and stuff," approached petitioner and asked him to find methamphetamine for her. After negotiating a price of $1500, petitioner told the victim that she had to drive him to buy the drugs because he was having problems with his pickup truck.

The two then drove to several locations until the victim was able to withdraw the money for 15 grams of methamphetamine. After petitioner explained to the victim that she could not accompany him to his friend's house where he would buy the drugs, the victim suddenly jumped out of the car and ran off, yelling that petitioner was trying to rob her. Petitioner then ran from the car as well, because he was "in shock" and "didn't know what to do." Still intending to "go through with [his] end of the deal," petitioner kept the victim's $1500 until he was arrested. During their time in the car together, petitioner denied threatening or using any force against the victim at any time. T. 195-216.

## C.  **Verdict and Sentencing**

Petitioner was charged with first-degree robbery, second-degree kidnapping, and fourth-degree criminal possession of stolen property as a result of the incident on February 5.  Following a two-day jury trial, petitioner was found not guilty of the robbery count and guilty of the two remaining counts. T. 353-354. Petitioner was sentenced to concurrent terms of imprisonment, the

longest of which was 25 years. S.13.

### D. Direct Appeal

Through counsel, petitioner filed a brief to the Appellate Division, Third Department, arguing the following points: (1) the verdict was against the weight of the evidence; (2) ineffective assistance of trial counsel; (3) the verdict was repugnant; and (4) the sentence was harsh and excessive. See Respondent's Exhibits ("Ex.") A. In addition, petitioner filed a *pro se* supplemental brief, in which he raised the following claims: (1) the trial court should have inquired into petitioner's mental capacity to stand trial; (2) petitioner's mental health records were improperly incorporated into petitioner's pre-sentence report; (3) the evidence was insufficient to prove the conviction for kidnapping and the kidnapping charged merged with the robbery charge; and (4) prosecutorial misconduct. Ex. B. The Third Department unanimously affirmed the judgment of conviction. People v. Smith, 41 A.D.3d 1093 (3d Dept. 2007); lv denied, 9 N.Y.3d 1039 (2008); see also Ex. F-G.

### E. Post-Conviction Relief

While petitioner's appeal was pending, he filed a *pro se* motion to vacate the judgment of conviction pursuant to N.Y. Crim. Proc. L. ("C.P.L.") § 440.10, in which petitioner claimed that: (1) petitioner was not competent to stand trial; the trial court should have inquired into petitioner's capacity; (2) petitioner's mental

health records were improperly incorporated into petitioner's pre-sentence report; (3) insufficiency of the evidence and merger doctrine; (4) the verdict was repugnant; (5) denial of right to counsel prior to the indictment; (6) the indictment was insufficient; and (7) petitioner's statements should have been suppressed. <u>See</u> Ex. H, L. The Chemung County Court denied the motion on procedural grounds, as well as on the merits. Ex. O. Leave to appeal that decision was denied by the Appellate Division On December 18, 2006. Ex. Q.

### F. Petition for Habeas Corpus

Petitioner then filed a *pro se* petition for writ of habeas corpus (Dkt. #1), wherein he raises the following grounds for relief: (1) insufficiency of the evidence; (2) the kidnapping charge merged with the other charges; (3) ineffective assistance of trial counsel; (4) the verdict was repugnant; (5) harsh and excessive sentence; (6) the trial court erred in failing to inquire into petitioner's mental competence; (7) petitioner's mental health records were improperly incorporated into petitioner's pre-sentence report; (8) prosecutorial misconduct; (9) ineffective assistance of appellate counsel; (10) petitioner was denied transcripts for use on appeal and in post-conviction proceedings; and (11) juror bias. Petition ("Pet.") ¶ 12-22. The respondent has submitted an answer and memorandum of law opposing the petition (Dkt. ## 19, 20). On April 30, 2008, counsel filed a notice of appearance on behalf of

the petitioner. (Dkt # 6). Through counsel, petitioner then submitted a supplement to his petition (Dkt. #10) and a reply to the respondent's opposing papers (Dkt. #32).

For the reasons that follow, I find that petitioner is not entitled to the writ, and the petition is dismissed.

## III. Discussion

### A. General Principles Applicable to Federal Habeas Review

#### 1. Standard of Review

Under the Anti-Terrorism and Effective Death Penalty Act ("AEDPA"), a federal court may grant habeas relief to a state prisoner only if a claim that was "adjudicated on the merits" in state court "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U .S.C. § 2254(d)(1), or if it "was based on an unreasonable determination of the facts in light of the evidence presented in the state court proceeding." § 2254(d)(2). A state court decision is "contrary to" clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme Court] on a question of law or if the state court decides a case differently than [the Supreme Court] has on a set of materially indistinguishable facts." Williams v. Taylor, 529 U.S. 362, 413 (2000). The phrase, "clearly established Federal law, as determined by the Supreme Court of the United States," limits the

law governing a habeas petitioner's claims to the holdings (not dicta) of the Supreme Court existing at the time of the relevant state-court decision. <u>Williams</u>, 529 U.S. at 412; <u>accord</u> <u>Sevencan v. Herbert</u>, 342 F.3d 69, 73-74 (2d Cir. 2002), <u>cert. denied</u>, 540 U.S. 1197 (2004).

A state court decision is based on an "unreasonable application" of Supreme Court precedent if it correctly identified the governing legal rule, but applied it in an unreasonable manner to the facts of a particular case. <u>Williams</u>, 529 U.S. at 413; <u>see also</u> <u>id.</u> at 408-10. "[A] federal habeas court is not empowered to grant the writ just because, in its independent judgment, it would have decided the federal law question differently." <u>Aparicio v. Artuz</u>, 269 F.3d 78, 94 (2d Cir. 2001). Rather, "[t]he state court's application must reflect some additional increment of incorrectness such that it may be said to be unreasonable." <u>Id.</u> This increment "need not be great; otherwise, habeas relief would be limited to state court decisions so far off the mark as to suggest judicial incompetence." <u>Francis S. v. Stone</u>, 221 F.3d 100, 111 (2d Cir. 2000) (internal quotation marks omitted).

Under AEDPA, "a determination of a factual issue made by a State court shall be presumed to be correct. The [petitioner] shall have the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1); <u>see also</u> <u>Parsad v. Greiner</u>, 337 F.3d 175, 181 (2d Cir. 2003) ("The

presumption of correctness is particularly important when reviewing the trial court's assessment of witness credibility."), <u>cert. denied sub nom.</u> <u>Parsad v. Fischer</u>, 540 U.S. 1091 (2003). A state court's findings "will not be overturned on factual grounds unless objectively unreasonable in light of the evidence presented in the state-court proceeding." <u>Miller-El v. Cockrell</u>, 537 U.S. 322, 340 (2003).

### 2. Exhaustion Requirement

Before a federal court can address the merits of any constitutional issue contained in a petition for a writ of habeas corpus, the petitioner must have "exhausted the remedies available in the courts of the State." 28 U.S.C. § 2254(b)(1)(A); <u>see</u> <u>O'Sullivan v. Boerckel</u>, 526 U.S. 838, 843-44 (1999). "Exhaustion of state remedies requires presentation of the claim to the highest state court from which a decision can be obtained." <u>Hogan v. Ward</u>, 998 F.Supp. 290, 293 (W.D.N.Y. 1998) (citing <u>Daye v. Attorney General of the State of New York</u>, 696 F.2d 186, 190 n.3 (2d Cir. 1982)); <u>see</u> <u>O'Sullivan</u>, 526 U.S. at 839-40 ("a state prisoner must present his claims to a state supreme [i.e., highest] court in a petition for discretionary review in order to satisfy the exhaustion requirement.").

### B. Merits of the Petition

### 1. Sufficiency of the Evidence (Ground One)

As he did on direct appeal, petitioner argues that his

conviction was not supported by legally sufficient evidence. Petition ("Pet.") ¶ 12. Specifically, petitioner challenges the credibility of the victim, claiming that the jury could not have reasonably concluded that he committed the crimes for which he was convicted, second-degree kidnapping and fourth-degree possession of stolen property. The Appellate Division rejected petitioner's claim on the merits. Smith, 41 A.D.3d at 1093.

A petitioner who challenges the sufficiency of the evidence to support his conviction faces a "very heavy burden." Knapp v. Leonardo, 46 F.3d 170, 178 (2d Cir. 1995). The standard to be applied on habeas review when the claim of legally insufficient evidence is made is "whether, after viewing the evidence in the light most favorable to the prosecution, *any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." Jackson v. Virginia, 443 U.S. 307, 319 (1979). Moreover, a federal habeas court must "resolve all issues of credibility[ ] in favor of the jury's verdict." United States v. Reyes, 157 F.3d 949, 955 (2d Cir. 1998); see also Huber v. Schriver, 140 F.Supp.2d 265, 277 (E.D.N.Y. 2001) ("[F]ederal habeas courts 'are not free to reassess the [fact-specific] credibility judgments by juries or to weigh conflicting testimony.... [A federal habeas court] must presume that the jury resolved any questions of credibility in favor of the prosecution.'") (quoting Vera v. Hanslmaier, 928 F.Supp. 278, 284 (S.D.N.Y. 1996)). A

sufficiency claim therefore does not permit the reviewing court to redetermine the credibility or reliability of witnesses or substitute its view of the evidence for that of the trier of fact. Marshall v. Lonberger, 459 U.S. 422, 434 (1983); Maldonado v. Scully, 86 F.3d 32, 35 (2d Cir. 1996).

Here, there is no reason to disturb the jury's finding. In New York, a person is guilty of Kidnapping in the Second Degree when he "abducts another person." P.L. § 135.20. "Abudct" is defined as "to restrain a person with intent to prevent his liberation by either (a) secreting or holding him in a place where he is not likely to be found, or (b) using or threatening to use deadly physical force." P.L. § 135.00(2). The Penal Law defines "restrain" to mean "to restrict a person's movements intentionally and unlawfully in such a manner as to interfere substantially with his liberty with his liberty by moving him from one place to another . . . without consent and with knowledge that such restriction is unlawful. A person is so moved or confined 'without consent' when such is accomplished by . . . physical force, intimidation, or deception." P.L. § 135.00(1).

The prosecution presented evidence that petitioner restrained the victim by entering her car and using threats of physical violence to force her to drive to multiple locations across New York and Pennsylvania over the course of four hours in search of a bank or a store where she could withdraw money from her bank. The

victim testified that petitioner restrained her in her vehicle through the threatened use of a knife. Petitioner continued to intimidate the victim by ordering her "not to do anything stupid" and "not to act suspicious" as he directed her to banks and stores, forcing her to withdraw money from her accounts.  The event ended only when petitioner made the victim stop at a phone booth in a convenience store parking lot and she ran into a store screaming for help.  T. 17-18, 21-31, 50-52, 55-56.  Contrary to petitioner's assertion, the prosecution was not required to prove that petitioner "had a knife on his person." Pet. ¶ 12 (p. 9). The victim testified that she observed a knife in petitioner's hand. Since that observation established the threat for the victim, if believed by the jury, it was sufficient for the jury to reasonable find that petitioner had threatened her with deadly physical force. See, e.g., People v. Dodt, 61 N.Y.2d 408, 411 (1984) ("Proof in a kidnapping prosecution that defendant threatened the use of a gun is sufficient to establish abduction by the threatened use of deadly physical force, even though there is no evidence that in fact he possessed an operable firearm.").

Petitioner's assertion that the victim's testimony was not credible likewise fails, because issues of credibility may are for the jury to determine and  not be re-evaluated on federal habeas review. Maldonado, 86 F.3d at 35; Gruttola v. Hammock, 639 F.2d 922, 928 (2d Cir. 1981) ("[T]he jury's decision was largely a

matter of choosing whether to believe [the defense's] version of the events or to believe the version offered by the State. The jury chose to believe the State's witnesses .... We cannot say that no rational jury could have found guilt beyond a reasonable doubt on all the evidence."); Williams v. Bennet, No. 97 CIV. 1628(HB), 1998 WL 236222, at *5 (S.D.N.Y. Apr.20, 1998) ("[Petitioner] relies on inconsistencies in his victim's trial testimony as compared to her statements to the police, the District Attorney's office and before the grand jury. These inconsistencies were placed before the jury by the defense, which made them a central focus of its case. The jury's decision to credit [the victim's] testimony, despite its inconsistencies, over [petitioner's] testimony, is fully supported by the record.")).

Finally, petitioner's challenge to the legal sufficiency of his conviction of possessing stolen property is meritless. Under New York law, a person is guilty of Criminal Possession of Stolen Property in the Fourth Degree when he knowingly possesses stolen property, with the intent to benefit himself (or a person other than an owner thereof), and the value of the property exceeds one thousand dollars. P.L. § 165.45. The victim testified that while she had been held captive by petitioner, her forced her to withdraw $1500 from her credit card account, which he then kept. That sum of money was found in petitioner's pocket upon apprehension by police later that day. T. 19, 32, 34-35, 43-44, 56. Petitioner

contends that the victim gave petitioner the money. Again, this argument presents a credibility issue that the jury has already resolved, and is thus not to be re-examined by this Court. <u>Maldonado</u>, 86 F.3d at 35.

In sum, petitioner's arguments that the evidence legally insufficient do not warrant habeas relief. The Appellate Division's decision was neither contrary to, nor an unreasonable application of <u>Jackson v. Virginia</u>, and this claim is denied.

### 2. Competency Claims (Grounds Six and Seven)

In the instant petition, the petitioner claims that the state court erroneously failed to inquire into his competence prior to trial and sentencing. ¶ 17. He suggests that the pre-sentence investigation report prepared by the Chemung County Probation Department demonstrated that petitioner had a history of hospitalizations to treat psychiatric issues, including bi-polar disorder, and that he had been taking psychiatric medications while incarcerated for the instant offense. <u>Id.</u> ¶ 17 (p. 22); Pet'r Reply Br. at 21-22. The Third Department rejected his contention on the merits. <u>Smith</u>, 41 A.D.3d at 1094.

The Due Process Clause of the Fourteenth Amendment prohibits the criminal prosecution of a defendant who is not competent to stand trial. <u>Drope v. Missouri</u>, 420 U.S. 162 (1975); <u>Pate v. Robinson</u>, 383 U.S. 375 (1966). A defendant is incompetent to proceed if he "lacks the capacity to understand the nature and

object of the proceedings against him, to consult with counsel, and to assist in preparing his defense. Drope, 420 U.S. at 171. Some degree of mental illness, however, does not necessarily amount to incompetence to stand trial. United States v. Vamos, 797 F.2d 1146, 1150-51 (2d Cir. 1986).

Competency to stand trial is an issue of fact. A state court's competency determination, therefore, is entitled to a presumption of correctness on habeas review. Demosthenes v. Baal, 495 U.S. 731, 735 (1990); see also Harris v. Kuhlmann, 346 F.3d 330, 351-52 (2d Cir. 2003). In order to succeed on a habeas claim challenging a state factual determination, a petitioner has the "burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(i). Petitioner has submitted no evidence at all to rebut the trial court's implicit factual determination that he was competent to proceed at trial. Nor has he cited anything in the trial record to support his claim that he did not understand the nature of the proceedings against him, that he could not consult with counsel, or that he could not assist in his defense. Drope, 420 U.S. at 171. To the contrary, petitioner cogently participated in his own defense through his detailed testimony at trial. The same was observed by the § 440.10 court in denying petitioner's mental incapacity claim. See Ex. O at 2.

The record gives no indication that petitioner was irrational, or possessed a demeanor that would have alerted the trial court to

a mental health issue. See Drope, 420 U.S. at 180. Since no factors arose during trial that would have called petitioner's competency into doubt, the trial judge would have detected no basis upon which to question petitioner's competence to participate in the proceedings. See United States v. Nichols, 56 F.3d 403, 414 (2d Cir. 1995) ("The Due Process Clause [does not] require[] a hearing in every instance; a hearing is required only if the court has 'reasonable cause' to believe that the defendant has a mental defect rendering him incompetent.")(citing Pate, 383 U.S. at 385-86). Additionally, defense counsel never moved for a competency examination or called petitioner's competency into question. See Pate, 383 U.S. at 179 n.13 ("The conclusive factor [regarding petitioner's competence] is that Robinson's own lawyers, the two men who apparently had the closest contact with the defendant during the proceedings, never suggested he was incompetent to stand trial and never moved to have him examined on incompetency grounds during trial.")

Furthermore, a defendant's history of mental impairment alone does not require the trial court *sua sponte* to order a competency hearing. "No clearly established Federal law as determined by the Supreme Court . . . indicates that [petitioner's] low I.Q. and history of mental impairment alone required the trial court *sua sponte* to order a competency hearing." Davis v. Keane, 45 Fed.Appx. 31, 32 (2d Cir. 2002) (citing Atkins v. Virginia, 536

U.S. 304 (2002)); accord, e.g., Lopez v. Walker, 239 F.Supp.2d 368, 374 (S.D.N.Y. 2003) (pre-sentence report referred to prior suicide attempts, hospitalization, and the use of the drug Sinequan, and stated that evaluation of petitioner's "present emotional functioning" would be "appropriate" in light of his claim of a prior psychiatric history; however, this evidence alone did not require trial court to make further inquiry into petitioner's competency); see also People v. Tortorici, 92 N.Y.2d 757, 765 (1999) (A "defendant's history of psychiatric illness does not in itself call into question defendant's competence to stand trial."). Where, as here, the defendant appeared competent, the trial court's failure to conduct a full competency hearing is not a ground for reversal. Lopez, 239 F.Supp.2d at 374. This aspect of petitioner's competency claim is dismissed, as the Appellate Division did not contravene clearly established Federal law in rejecting petitioner's argument.

In a related claim, petitioner contends that his constitutional rights were violated when the probation department attached his psychiatric records to the pre-sentence investigation report. Specifically, that the probation officer preparing the report attached the psychiatric records without petitioner's authorization. Pet. ¶ 18.

The record indicates that petitioner did sign a release form consenting to records' incorporation into the pre-sentence report.

Resp't Mem. at 38; Pet. ¶ 18 (p. 24). Further, petitioner raised this issue in a complaint pursuant to 42 U.S.C. § 1983, and on April 17, 2008, this Court dismissed the complaint in its entirety. Smith v. Stanton, 545 F.Supp.2d 302 (W.D.N.Y. 2008) ("Regardless of the precise nature of plaintiff's claims, I see no basis for a constitutional claim here. Certainly the inclusion of plaintiff's psychiatric records in the PSR was legitimate, so that the sentencing court would have all relevant information before it when imposing sentence. The further distribution of the PSR to the correctional facility where plaintiff was committed was likewise supported by the state's interests not only in maintaining prison security, but also in ensuring that plaintiff himself be provided with appropriate medical and psychiatric treatment."). Finally, petitioner has cited no Supreme Court precedent in support of his claim that his constitutional rights were violated by the inclusion, with petitioner's express consent, of the petitioner's mental health records in the pre-sentence report. He thus cannot establish that the state court's denial of the claim contradicted or was an unreasonable application of federal constitutional law.

### 3. Prosecutorial Misconduct (Ground Eight)

Petitioner contends that numerous errors that occurred during his trial resulted in the prosecutor's termination from his position in the district attorney's office, thereby evidencing the prosecutor's misconduct. Pet. ¶ 19. The Appellate Division

rejected this argument on the merits. <u>Smith</u>, 41 A.D.3d at 1094.

Petitioner does not offer any information as to how he learned of the prosecutor's removal, nor does he support his allegation with any credible facts. The "problems" he alleges to have occurred in support of his prosecutorial misconduct argument, i.e., that the evidence was insufficient, the verdict was repugnant, and the court misapplied the merger doctrine, have been raised separately in the instant petition. In any event, petitioner's arguments do not form a basis for a claim of prosecutorial misconduct, which implicates the fundamental fairness of the petitioner's trial. <u>See, e.g.</u>, <u>Donnelly v. DeChristoforo</u>, 416 U.S. 637, 645 (1974)

Even if the prosecutor were in fact fired from his position, the petitioner cannot link the prosecution of his case with those circumstances. As such, petitioner has not provided a foundation upon which a claim of prosecutorial misconduct can be made, and a federal court may not grant habeas relief based upon unsubstantiated conclusions, opinions, or speculation. <u>Wood v. Bartholomew</u>, 516 U.S. 1, 8 (1995) (federal courts should not grant "habeas relief on the basis of little more than speculation with slight support"); <u>see</u> <u>Osinoiki v. Riley</u>, CV-90-2097, 1990 WL 152540, at *2-3 (E.D.N.Y. Sept. 28, 1990) (conclusory statements based on speculation "are inadequate to satisfy petitioner's burden"); <u>Skeete v. People of New York State</u>, No. 03-CV-2903, 2003 WL 22709079, *2 (E.D.N.Y. Nov. 17, 2003) (vague, unsupported

allegations of constitutional violations and errors during alien's state trial did not assert a viable habeas claim.).

Finally, the Court has reviewed the record in its entirety and has found nothing to support a claim of prosecutorial misconduct, which requires that the prosecutor's actions must have "'so infected the trial with unfairness as to make the resulting conviction a denial of due process.'" <u>Darden v. Wainwright</u>, 477 U.S. 168, 181 (1986) (quoting <u>Donnelly</u>, 416 U.S. at 643). Accordingly, the Appellate Division's decision did not run afoul of clearly established Supreme Court precedent.

### 4.  Ineffective Assistance of Trial Counsel (Ground Three)

Petitioner contends that he received ineffective assistance of trial counsel because, *inter alia*, his attorney: (1) abandoned petitioner's <u>Huntley</u>[2] motion and failed to request a <u>Sandoval</u>[3] hearing; (2) failed to object to leading questions and bolstering by the prosecutor; (3) failed to challenge the court's application of the merger doctrine and object on the ground that the verdict was repugnant; and (4) failed to object to the inclusion of petitioner's psychiatric records in the pre-sentence report. Pet. ¶ 14. The Appellate Division rejected these claims on the merits.

---

[2] <u>People v. Huntley</u>, 15 N.Y.2d 72 (1965) (trial court must conduct hearing to determine voluntariness of a defendant's statements to be used as evidence at trial)

[3] <u>People v. Sandoval</u>, 34 N.Y.2d 371 (1974) (prospective ruling on admissibility or prior convictions or proof of prior commission of specific criminal, vicious, or immoral acts to impeach a defendant's credibility).

Smith, 41 A.D.3d at 1094.

To establish that he was deprived of his Sixth Amendment right to the effective assistance of trial counsel, a petitioner must show that (1) his attorney's performance was deficient, and that (2) this deficient performance prejudiced his defense. Strickland v. Washington, 466 U.S. 668, 687 (1984). Deficiency is measured by an objective standard of reasonableness, and prejudice is demonstrated by a showing of a "reasonable probability" that, but for counsel's unprofessional errors, the result of the trial would have been different. Id. at 694. "A reasonable probability is a probability sufficient to undermine confidence in the outcome of the proceeding." Id. To succeed, a petitioner challenging counsel's representation must overcome a "strong presumption that [his attorney's] conduct falls within the wide range of reasonable professional assistance." Id. at 689. A reviewing court "must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct," id., and may not second-guess defense counsel's strategy. Id. at 690. Here, petitioner has failed to demonstrate that his counsel's conduct was deficient within the meaning of Strickland, and that, but for the deficiency, the result of his trial would likely have been different.

With respect to petitioner's first two claims, that counsel erred in withdrawing a Huntley motion to challenge the

voluntariness of his statement to an FBI agent, and that counsel was ineffective for failing to request a <u>Sandoval</u> ruling, these claims are matters of trial strategy and as such are "virtually unchallengeable absent exceptional grounds for doing so." <u>United States v. Cohen</u>, 427 F.3d 164, 170 (2d Cir. 2005) (internal quotations omitted).

Moreover, both decisions were objectively reasonable. Petitioner's statement to an FBI agent was consistent with petitioner's testimony at trial that the trial events depicted an aborted drug sale as opposed to a kidnapping and robbery. Apparently, petitioner made no confession or even a partial admission. T. 221-223. Thus, petitioner's counsel likely saw there was no benefit to gain from barring a statement that echoed the defense at trial. <u>See</u> Hr'g Mins. dated 3/18/2005 at 8. Accordingly, counsel's decision to waive the <u>Huntley</u> hearing was reasonable. <u>See</u> <u>Barrigar v. Couture</u>, No. 9:98-CV-0668 NAM/GLS, 2001 WL 1860889 (N.D.N.Y. June 27, 2001) (counsel's strategy to waive the <u>Huntley</u> hearing appeared to be reasonable).

Petitioner's argument that counsel failed to seek a <u>Sandoval</u> ruling is equally lacking in merit. Petitioner's criminal history consisted of a variety of misdemeanor convictions. As such, defense counsel attempted to portray petitioner has someone with a minor record that was known to have used drugs frequently, i.e., the type of person that someone might approach to purchase narcotics, but

not a kidnapper or robber. Counsel undertook this defense with petitioner's consent, as petitioner openly discussed his drug use at trial. See T. 218-219. Accordingly, counsel's strategy was reasonable under the circumstances. Paredes v. Marshall, No. 07 Civ. 9862(LTS)(JCF), 2008 WL 4937566, *4-*5 (S.D.N.Y. Nov. 20, 2008) (holding that counsel's tactical decision to incorporate evidence of petitioner's prior arrest into trial testimony was reasonable). Because counsel's strategy was reasonable under the circumstances, it is unnecessary for the Court to determine whether petitioner suffered prejudice. Greiner v. Wells, 417 F.3d 305, 319 (2d Cir. 2005) ("'[T]here is no reason for a court deciding an ineffective assistance claim ... to address both components of the inquiry if the defendant makes an insufficient showing on one.'" (alterations in original) (quoting Strickland, 466 U.S. at 697)).

Next, his claim that counsel failed to object to the prosecutor's leading questions and bolstering of the victim's testimony is belied by the record. The pages of the transcript that purport to contain leading questions and evidence of bolstering do not support petitioner's claims.[4] See T. 18-20, 22, 28. Since there was no basis to object to any of the testimony in question, counsel could not have been ineffective for failing to do so. Carvajal v. Artus, 2008 WL 4555531, *35 (S.D.N.Y. Oct. 10, 2008) (collecting

---

[4] For example, on page 22 of the transcript, the prosecutor asked the victim about her employment, and she also revealed that she played the organ at her church.

cases that hold counsel cannot be ineffective for failing to make
a meritless objection).

Finally, petitioner's arguments that counsel should have
argued the application of the merger doctrine, should have objected
to the verdict as repugnant, and should have objected to the
inclusion of petitioner's psychiatric history in the pre-sentence
report are without merit. The underlying claims were affirmatively
raised on petitioner's direct appeal and were rejected on the
merits by the Appellate Division. Thus, petitioner cannot establish
that he suffered prejudice as a result of counsel's failure to
register an objection to those issues, because the outcome of his
case would not have been different.

For the foregoing reasons, petitioner has not demonstrated
that his counsel was ineffective under the terms of <u>Strickland</u>. As
a result, the Appellate Division's decision was not contrary to,
nor an unreasonable application of clearly established Supreme
Court law.

### 5. Grounds Nine through Eleven are Unexhausted

Petitioner's claims that he received ineffective assistance of
appellate counsel, that he was denied transcripts for use on appeal
and in post-conviction proceedings, and that the jury was biased,
are unexhausted because they are raised for the first time in the
instant petition. Pet. ¶¶ 20-22.

A habeas court may deny unexhausted claims on the merits

despite petitioner's failure to exhaust his state court remedies pursuant to 28 U.S.C. § 2254(b)(2). The majority of district courts in this circuit have followed a "patently frivolous" standard for denying unexhausted claims. Colorio v. Hornbeck, No. 05 CV 4984(NG) (VVP), 2009 WL 811588, at *3 (E.D.N.Y. Mar. 3, 2009) (citing Brown v. State of New York, 374 F.Supp.2d 314, 318 (W.D.N.Y. 2005) (citing Naranjo v. Filion, No. 02-CIV-5449, 2003 WL 1900867, at *8 (S.D.N.Y. Apr.16, 2003) (collecting cases)) (footnote omitted)), while a minority of district courts have exercised § 2254(b)(2) discretionary review when "it is perfectly clear that the [petitioner] does not raise even a colorable federal claim[.]" Hernandez v. Lord, No. 00-CIV-2306, 2000 WL 1010975, at *4 n. 8 (S.D.N.Y. Jul. 21, 2000) (collecting and analyzing cases, internal quotation omitted). Another test that has been suggested in this Circuit is that unexhausted claims should be reviewed under a "heightened de novo standard." King v. Cunningham, 442 F.Supp.2d 171, 179 (S.D.N.Y. 2006). Regardless of the standard employed, petitioner's claims fail on the merits.

### a. Ineffective Assistance of Appellate Counsel (Ground Nine)

Petitioner alleges that his appellate counsel failed to obtain the *voir dire* transcripts from petitioner's trial and "thus completed the entire appeal without complete transcripts." Pet. ¶ 20. Petitioner is essentially arguing that the *voir dire* transcript would have supported a claim for jury bias on direct appeal, and

that his appellate counsel was constitutionally ineffective for failing to raise it as a potentially meritorious argument.

The standard for ineffective assistance of counsel enunciated in <u>Strickland</u> extends to appellate counsel. <u>Aparicio v. Artuz</u>, 269 F.3d 78, 95 (2d Cir. 2001). In order to obtain habeas relief, petitioner must show that: (1) appellate counsel was objectively unreasonable in failing to raise a particular issue in appeal; and (2) absent counsel's deficient performance, there was a reasonable probability that petitioner's appeal would have been successful before the state's highest court. <u>Mayo v. Henderson</u>, 13 F.3d 528, 533-34 (2d Cir. 1994).

To establish ineffective assistance of appellate counsel for failure to raise specific issues, "it is not sufficient for the habeas petitioner to show merely that counsel omitted a nonfrivolous argument, for counsel does not have a duty to advance every nonfrivolous that could be made." <u>Id.</u> at 533. Rather, counsel may winnow out weaker arguments on appeal and focus on one or two key issues that present "the most promising issue for review." <u>Jones v. Barnes</u>, 463 U.S. 745, 751-53 (1983).

First, the record establishes that trial counsel did not timely object during jury selection. Petitioner's claim of juror bias was therefore not properly preserved for appellate review. Habeas courts in this circuit have held that the failure of appellate counsel to raise an unpreserved error does not rise to

the level of ineffective assistance. <u>Giraldi v. Bartlett</u>, 108 F.Supp.2d 321, 335 (S.D.N.Y. 2000); <u>Lugo v. Kuhlmann</u>, 68 F.Supp.2d 347, 372-73 (S.D.N.Y. 1999); <u>Avincola v. Stinson</u>, 60 F.Supp.2d 133, 148-49 (S.D.N.Y. 1999).

Second, because the underlying claim of juror bias is without merit, <u>see</u> discussion <u>infra</u> at III.B.5.c., petitioner cannot demonstrate that he was prejudiced by his counsel's omission of this argument. <u>Aparicio v. Artuz</u>, 269 F.3d 78, 99 (2d Cir. 2001) (holding that it is not ineffective counsel to fail to raise meritless claims on appeal); <u>Avincola v. Stinson</u>, 60 F.Supp.2d 133 (S.D.N.Y. 1999).

Finally, counsel did raise a number of strong and substantial arguments on appeal in a thorough and articulate 64-page brief to the Appellate Division. Ex. A. Accordingly, the Court dismisses this claim as patently frivolous.

### b.    Denial of Transcripts (Ground Ten)

Petitioner claims that he was denied meaningful access to the courts by being denied a copy of the *voir dire* transcript. According to petitioner, the transcript was necessary to assert claims of juror bias and ineffective assistance of trial and appellate counsel in motions for post-conviction relief. Pet. ¶ 21. In papers dated January 14, 2008, petitioner requested that the county court provide petitioner with a copy of the minutes from the *voir dire* proceedings on the basis that his appellate counsel

failed to exercise "due diligence" in obtaining that portion of the trial transcript. Ex. W. The county court denied petitioner's motion:

> Defendant's application to proceed as a poor person and to order the trial transcript was made to and granted by the appellate division, not the trial court. Since Defendant now claims that his request was not properly fulfilled and that his assigned appellate counsel failed in her duty, it is no longer within the jurisdiction of the lower court to rule on Defendant's request . . . . Because any claims of ineffective assistance of appellate counsel are within the jurisdiction of the appellate court, and not the trial court, this court lacks the jurisdiction to address Defendant's imploration.

Ex. X. at 2.

As the county court correctly observed, the essence of petitioner's argument is that his appointed counsel failed to brief the issue of juror bias, or even pursue it by studying the *voir dire* minutes. The merits of petitioner's ineffective assistance of counsel claim have been considered and rejected by this Court. <u>See supra</u> at III.B.4.b.

To the extent that petitioner argues he was deprived of transcripts and therefore could not file a § 440.10 or *coram nobis* application, the Supreme Court has not held that a criminal defendant is entitled to free transcripts to pursue collateral relief in state court. <u>See, e.g.</u>, <u>Buford v. Henderson</u>, 524 F.2d 147, 151 (2d Cir. 1975) (Supreme Court has never held that a

defendant is entitled to free transcripts to pursue a habeas corpus petition in federal court); <u>Gonzalez v. Fischer</u>, 2003 WL 22953072, at *13 (E.D.N.Y. Oct.16 2003) (petitioner not entitled to a free copy of the trial transcript to prepare a *coram nobis* motion). Rather, the Supreme Court has expressly left open the question of whether a defendant is entitled to a free set of the trial transcripts to pursue collateral remedies. <u>See</u> <u>Wade v. Wilson</u>, 396 U.S. 282 (1970); <u>compare</u> <u>Mayer v. City of Chicago</u>, 404 U.S. 189 (1971) (state must afford an indigent defendant a record of sufficient completeness to permit proper consideration of his claims on appellate review). Accordingly, petitioner has not stated a claim on which habeas relief can be granted.

### c.    Juror Bias (Ground Eleven)

Petitioner alleges that he was denied a fair trial because one juror was "related to the alleged victim" and another "worked for the Court or Court personnel." Pet. ¶ 22.

A criminal defendant enjoys the right to be tried by "a panel of impartial, 'indifferent' jurors." <u>Irvin v. Dowd</u>, 366 U.S. 717, 722 (1961).  The test for determining whether a juror is biased is "whether the juror[ ] ... had such fixed opinions that [he] could not judge impartially the guilt of the defendant." <u>Patton v. Yount</u>, 467 U.S. 1025, 1035 (1984). Actual bias may be demonstrated by direct proof, such as an admission during *voir dire*. <u>See</u> <u>United States v. Torres</u>, 128 F.3d 38, 43 (2d Cir. 1997). Bias may be

"implied" or "presumed" as a matter of law where "an average person in the position of the juror in controversy would be prejudiced." Id. at 45.

At the outset, petitioner's assertions that one juror was an employee of the court and another was related to the victim are belied by the record. Out of the jurors that ultimately sat on the jury, one worked as a corrections officer, one worked for the county department of social services, one was acquainted with officers employed by the sheriff's department, and two had relatives that were sheriff's deputies in Chemung and Monroe counties. There is no evidence in the record to indicate that any of the chosen jurors were actually biased against the petitioner. See Johnson v. Annetts, No. 05 CV 4504(BMC), 2007 WL 1246263, *1 (E.D.N.Y. April 27, 2007). Each juror repeatedly stated that they could be fair and impartial, and that their experiences or relationships would not influence their decision-making in the case. J.S. 9, 11, 28, 35, 39-40, 59-60, 62-63, 74-75.

As to the two jurors that worked in the criminal justice system, mere membership in a law enforcement agency is not presumptively a disqualification for service on a jury in a criminal trial." Mikus v. United States, 433 F.2d 719, 724 (2d Cir. 1970 (citations omitted); accord Conley v. Ebert, No. 05-CV-5810 SJF, 2007 WL 137148, *6 (E.D.N.Y. Jan. 10, 2007). Similarly,a juror's close relationship (e.g., a family member) with a peace

officer, standing alone, is insufficient to establish implied bias. U.S. v. Morales, 185 F.3d 74, 83-24 (2d Cir. 1999); accord Torrez v. Sabourin, No. 00 CIV. 3286(AGS), 2001 WL 401444, *7 (S.D.N.Y. April 19, 2001).

Finally, when prospective jurors did exhibit bias, they were immediately excused. J.S. 26-27, 31, 38, 41, 54-55, 60-62, 67-68, 69, 71-72.

In sum, petitioner has not stated a basis upon which he can argue that he was deprived of a fair trial under the Sixth Amendment due to juror bias. This claim is dismissed.

### 6. Petitioner's Remaining Claims are Not Cognizable on Habeas Review

#### a. Merger Doctrine (Ground Two)

Petitioner argues that the elements of robbery and kidnapping merged in his case, and that due to his acquittal on the robbery charge, the so-called "merger doctrine"[5] should have resulted in a dismissal of the kidnapping charge. Pet. ¶ 13.

The merger doctrine was developed by New York state courts and is a doctrine of state law. Such a violation does not present a cognizable claim in a habeas proceeding. Federal courts have held that stand-alone claims of violations of New York's merger doctrine are not cognizable on habeas review. See Mackenzie v. Portuondo,

---

[5] "The merger doctrine is intended to preclude conviction for kidnapping based on acts which are so much the part of another substantive crime that the substantive crime could not have been committed without such acts and that independent criminal responsibility may not fairly be attributed to them." People v. Cassidy, 40 NY.2d 763, 767 (1976).

208 F.Supp.2d 302, 323 (E.D.N.Y. 2002) ("Petitioner claims that, in violation of state law, the trial court erred because it did not apply the 'merger doctrine' and did not dismiss the Unauthorized use of a Motor Vehicle charge as a lesser included offense of Robbery.... Here, the Petitioner's claims are based entirely on alleged state law violations. The Petitioner has not alleged, much less proven, that the supposed state law errors violated his federal constitutional rights."); <u>Dinsio v. Donnelly,</u> Nos. 9:03-CV-0779 (LEK/VEB), 9:04-CV-013 (LEK/GJD), 2007 WL 4002684, *15 (N.D.N.Y. Nov. 15, 2007) ("Petitioner's claim that the Appellate Division erred with respect to its interpretation and application of the merger doctrine is purely a claim under New York State law. Such claims are not cognizable on federal habeas review.")

Accordingly, petitioner's claim that the kidnapping charge should have been dismissed under the merger doctrine is not properly before this Court.

### b     Repugnant Verdict (Ground Four)

Petitioner next claims that the jury's verdict convicting him of second-degree kidnapping and fourth-degree criminal possession of stolen property was repugnant to an acquittal on the first-degree robbery charge. Pet. ¶ 15. The respondent has correctly pointed out that this claim is not cognizable on habeas review. It is well-settled that inconsistent jury verdicts are constitutionally permissible, and do not present a question for

federal habeas review.  See, e,.g., Dowling v. United States, 493 U.S. 342 (1990) (stating that "inconsistent verdicts are constitutionally tolerable"); Harris v. Rivera, 454 U.S. 339, 345 (1981) ("[i]nconsistency in a verdict is not a sufficient reason for setting it aside"); United States v. Powell, 469 U.S. 57, 58, 64-65 (1984) (holding that "consistency in the verdict is not necessary" and noting that inconsistent verdicts are often the product of "mistake, compromise, or lenity,"); United States v. Acosta, 17 F.3d 538, 545 (2d Cir. 1994) ("It has long been established that inconsistency in jury verdicts of guilty on some counts and not guilty on others is not a ground for reversal of the verdicts of guilty.") accord, e.g., Muldrow v. Herbert, 299 F.Supp.2d 166, 170 (W.D.N.Y. 2004) ("an allegedly inconsistent verdict does not present a constitutional violation ... [and] is not even cognizable on habeas review."); Williams v. Artuz, 98 Civ. 7964, 2002 WL 989529 at *8 (S.D.N.Y. May 15, 2002) ("A claim of inconsistent or repugnant verdicts presents no issue upon which federal habeas corpus relief could be granted."); Bowden v. Keane, 85 F.Supp.2d 246, 251 n.6 (S.D.N.Y. 2000) ("'a jury is free to render inconsistent verdicts or to employ relevant evidence in convicting on one count that it may seem to have rejected in acquitting on other counts.'"), aff'd, 237 F.3d 125 (2d Cir. 2001) (quoting United States v. Rowan, et al., 518 F.2d 685, 689 (6th Cir. 1975)). According to the Supreme Court, a criminal defendant

"already is afforded protection against jury irrationality or error by the independent review of the sufficiency of the evidence undertaken by the trial and appellate courts" and therefore "further safeguards against jury irrationality" are not necessary. Powell, 469 U.S. at 67. As discussed earlier, petitioner's conviction of second-degree kidnapping was plainly supported by legally sufficient evidence. see discussion at III.B.1., and this claim is therefore dismissed.

### c. Harsh and Excessive Sentence (Ground Five)

Petitioner avers that his sentence of twenty-five years imprisonment with five years of post-release supervision is harsh and excessive. Pet. ¶ 16. However, a petitioner's assertion that a sentencing judge abused his discretion in sentencing is generally not a federal claim subject to review by a habeas court. See Fielding v. LeFevre, 548 F.2d 1102, 1109 (2d Cir. 1977)(citing Townsend v. Burke, 334 U.S. 736, 741 (1948) ("The [petitioner's] sentence being within the limits set by the statute, its severity would not be grounds for relief here even on direct review of the conviction, much less on review of the state court's denial of habeas corpus.")). A challenge to the term of a sentence does not present a cognizable constitutional issue if the sentence falls within the statutory range. White v. Keane, 969 F.2d 1381, 1383 (2d Cir. 1992); accord Ross v. Gavin, 101 F.3d 687 (2d Cir. 1996) (unpublished opinion). Here, petitioner was convicted of second-

degree kidnapping, a class B felony. P.L. § 135.20. Under New York's sentencing scheme, the maximum permissible term of imprisonment for a class B felony is twenty-five years. P.L. § 70.00. Petitioner's sentence, although the maximum allowable in New York, is still within the statutory range. Accordingly, petitioner has not presented a cognizable claim for habeas relief.

## IV.  Conclusion

For the reasons stated above, Glen Smith's petition for writ of habeas corpus pursuant to 28 U.S.C. § 2254 is denied, and the action is dismissed.  Because petitioner has failed to make a "substantial showing of a denial of a constitutional right," 28 U.S.C. § 2253(c)(2), the Court declines to issue a certificate of appealability. See, e.g., Lucidore v. New York State Div. of Parole, 209 F.3d 107, 111-113 (2d Cir. 2000).  The Court hereby certifies, pursuant to 28 U.S.C. § 1915(a)(3), that any appeal from this judgment would not be taken in good faith and therefore denies leave to appeal as a poor person.  Coppedge v. United States, 369 U.S. 438 (1962).

**SO ORDERED.**

S/Michael A. Telesca
_____
MICHAEL A. TELESCA
United States District Judge

Dated:    June 28, 2010
          Rochester, New York